COURT OF APPEALS
DECISION
DATED AND FILED

July 21, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1732-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. **2018CF202**

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

ERIC J. DEBROW,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Dane County: JOHN D. HYLAND, Judge. *Reversed and cause remanded with directions*.

Before Kloppenburg, Fitzpatrick, and Graham, JJ.

¶1 FITZPATRICK, J. Eric J. Debrow was charged in the Dane County Circuit Court with first-degree and second-degree sexual assault of a child based on allegations that he improperly touched A.B. and C.D.—respectively, Debrow's girlfriend's thirteen-year-old and eleven-year-old daughters—in separate

incidents.[1]   Both counts were persistent repeater charges because Debrow was previously convicted of first-degree sexual assault of a child.  *See* WIS. STAT. § 939.62(2m)(a), (b).   Prior to trial, Debrow moved to exclude that prior conviction from evidence presented to the jury, and the circuit court granted that motion.  Debrow also moved to exclude from evidence presented to the jury that he had on his computer a particular pornographic video and other acts evidence involving a separate incident in which A.B. woke up to find Debrow in her bedroom, and the court denied those motions.

¶2      During the trial, E.F.—the son of Debrow's girlfriend—testified that he witnessed Debrow enter the bedroom shared by A.B. and C.D. on the night of the alleged sexual assault of A.B.  The prosecutor asked E.F. whether he had learned anything that caused him to be "on alert" that night.  We agree with Debrow that, from E.F.'s response, jurors would have reasonably understood that E.F. was on alert and watching the door to his minor sisters' bedroom at night because E.F. learned from the CCAP website that Debrow had a prior criminal conviction related to sexual misconduct involving a child.[2]   The circuit court apparently intended to grant Debrow's request to strike that portion of E.F.'s testimony in light of the fact that the court had previously excluded evidence of Debrow's prior conviction.  Further, the circuit court attempted to instruct the jury about that testimony from E.F.  Debrow moved for a mistrial on the ground that

---

[1] Pursuant to the policy underlying WIS. STAT. RULE 809.86 (2019-20), we refer to the victims and their family members using initials that do not conform to their actual names.  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] CCAP, which stands for Consolidated Court Automation Programs, is an internet-accessible case management system that "provides public access online to reports of activity in Wisconsin circuit courts."  ***State v. Bonds***, 2006 WI 83, ¶¶1, 6, 292 Wis. 2d 344, 717 N.W.2d 133.

E.F.'s response introduced unfairly prejudicial information to the jury about Debrow's prior conviction, and the court denied that motion.

¶3      At the end of the trial, the jury convicted Debrow of second-degree sexual assault of A.B., and found Debrow not guilty of first-degree sexual assault of C.D.  Pursuant to the persistent repeater statute, the circuit court sentenced Debrow to life imprisonment without the possibility of release on extended supervision.[3]  Debrow appeals the judgment of conviction.

¶4      For the reasons discussed in this opinion, we reverse Debrow's judgment of conviction and remand for a new trial based on E.F.'s testimony, which was unfairly prejudicial to Debrow, and on our conclusion that such evidence was sufficiently prejudicial to warrant a new trial.  In addition, we conclude that the circuit court's instruction to the jury that was an attempt to cure the prejudicial effect of E.F.'s pertinent testimony did not sufficiently identify the prejudicial evidence that the jury was to disregard and did not instruct the jury in clear terms that the jury must not consider that evidence.

¶5      Our conclusions regarding E.F.'s testimony are sufficient to grant a new trial.  Nonetheless, we also address Debrow's remaining arguments regarding the admission of other evidence because those issues may recur on remand, and we conclude that the circuit court did not err in admitting that evidence.  Accordingly, we reverse the judgment of conviction and remand to the circuit court for a new trial and further proceedings consistent with this opinion.

---

[3] Pertinent to this appeal, WIS. STAT. § 939.62(2m)(c) provides:  "If the actor is a persistent repeater, the term of imprisonment for the felony for which the persistent repeater presently is being sentenced under [WIS. STAT.] ch. 973 is life imprisonment without the possibility of parole or extended supervision."  Sec. 939.62(2m)(c).

**BACKGROUND**

¶6     In 2018, officers from the City of Madison Police Department were dispatched to a residence to investigate the alleged sexual assault of a child. Living at the residence were Debrow and his girlfriend G.H., along with G.H.'s nineteen-year-old son E.F., her thirteen year-old-daughter A.B., and her eleven-year-old daughter C.D.   The following was reported to the officers.   Debrow entered the bedroom of A.B. and C.D. early that morning and touched A.B.'s buttocks and lower back over her clothes while she was sleeping.   A.B. woke up while Debrow was touching her, and she screamed at him to get out of her room. Based on this information, Debrow was placed under arrest.

¶7     Debrow was charged with second-degree sexual assault of a child under the age of 16 pursuant to WIS. STAT. § 948.02(2).[4]   Because Debrow had been convicted of first-degree sexual assault of a child in 2004, he was charged as a persistent repeater pursuant to WIS. STAT. § 939.62(2m)(a) and (b).   Debrow pled not guilty to that charge.

¶8     Later, the State filed a pre-trial motion to join the case involving the assault against A.B. with a separate case involving an alleged sexual assault by Debrow against C.D.   Debrow was charged in that separate case with first-degree sexual assault as a persistent repeater contrary to WIS. STAT. §§ 948.02(1)(e) and 939.62(2m)(a) and (b).[5]   Over Debrow's objection, the circuit court granted the

---

[4] WISCONSIN STAT. § 948.02(2) states, in relevant part:  "Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 16 years is guilty of a Class C felony."  Sec. 948.02(2).

[5] WISCONSIN STAT. § 948.02(1)(e) provides:   "(1) First degree sexual assault.… (e) Whoever has sexual contact or sexual intercourse with a person who has not attained the age of 13 years is guilty of a Class B felony."  Sec. 948.02(1)(e).

4

State's motion to join the two cases.[6] Evidence regarding the alleged sexual assault of C.D. is not germane to this appeal, and we generally do not discuss it further.

¶9 The jury returned a guilty verdict on the count of second-degree sexual assault of a child under the age of sixteen (A.B.) and a not guilty verdict on the count of first-degree sexual assault of a child under the age of thirteen (C.D.). The circuit court, as noted, sentenced Debrow to life imprisonment without the possibility of extended supervision. Debrow appeals.

¶10 We mention other material facts in the following discussion.

## DISCUSSION

¶11 Debrow argues that he is entitled to a new trial based on three separate errors: (1) the circuit court erred in denying Debrow's mistrial motion; (2) the court erred in allowing evidence that Debrow had on his computer a particular pornographic video; and (3) the court erred in allowing other acts evidence involving a separate incident in which A.B. woke up to find Debrow in her bedroom. We address each argument in turn.

---

[6] The State also moved to join fifteen counts of felony bail jumping in these two cases. The circuit court denied that motion, and the bail jumping cases remained separate from the sexual assault cases. Neither the bail jumping charges nor the order to join the sexual assault cases are in dispute in this appeal.

## I. The Circuit Court Erred in Denying Debrow's Mistrial Motion.

¶12     As noted, Debrow argues that the circuit court erroneously exercised its discretion in denying his mistrial motion which concerned a portion of E.F.'s testimony.  We now consider the pertinent events at trial.

### A. Pertinent Events at Trial.

¶13     On the first day of trial, the circuit court addressed motions filed by the parties.  In one such motion, Debrow requested that the court exclude from evidence presented to the jury his prior conviction in 2004 for first-degree sexual assault of a child.  More particularly, Debrow expressed concern to the circuit court that E.F. was aware of Debrow's prior conviction, and E.F. might testify about that conviction at trial.  Debrow argued that the evidence was not relevant to the pending charges and that any probative value was substantially outweighed by the danger of unfair prejudice to him.  The State agreed that the risk of unfair prejudice to Debrow outweighed any probative value, and the circuit court granted Debrow's motion.

¶14     During trial, the State called E.F. as a witness.  On direct examination, the State asked E.F. what he had witnessed the night before Debrow's arrest.  E.F. responded that he was lying awake in his bed with the bedroom door open and observed Debrow enter the bedroom of A.B. and C.D. before 5:00 a.m.  After five to ten minutes, E.F. heard one of his sisters scream and saw Debrow leave the room.  On cross-examination, E.F. stated that he was awake at that time of night because he was on medication and could not control when he fell asleep.

¶15    During redirect examination, the State requested a sidebar out of the hearing of the jurors because it proposed to ask E.F. questions about why E.F. at that time "thought something strange was going on inside" the girls' bedroom. The State explained that it did not intend to elicit evidence of Debrow's "extremely prejudicial" prior conviction although the record establishes that E.F.'s knowledge of Debrow's prior conviction was the sole basis for E.F.'s concerns. The State assured the circuit court that E.F. had been instructed prior to taking the stand that he was not to mention Debrow's prior conviction. Nonetheless, the State wanted to question E.F. about the reasons underlying his concern that something improper might be happening when he witnessed Debrow enter the room of A.B. and C.D. In response, Debrow argued that the State should not be allowed, through questions to E.F., to bring out evidence that the court had already ruled inadmissible. Debrow also contended that the questions proposed by the State could cause E.F. to testify that he knew about Debrow's prior conviction and, if that occurred, Debrow would move for a mistrial.

¶16    The circuit court acknowledged that a mistrial might occur if E.F. mentioned the prior conviction, but allowed the State to question E.F. on this topic, stating:

> [Y]ou may be able to go into this area in not a directly leading fashion but in a very direct or indirect but not leading manner.
>
> ….
>
> … I'll direct the State to be cautious in his question but since the defense objects to the straight out leading into this area, I'll sustain the objection and advise the State to proceed cautiously.

The court further stated that it would attempt to prevent E.F. from mentioning Debrow's prior conviction: "And certainly I'll be happy to be on pins and needles

as well to jump in if he starts saying something." The State similarly assured that it would "try to be quick to interrupt" if necessary.

¶17 After the sidebar concluded, the State questioned E.F. in the presence of the jury about his reason for being "on alert" that night:

> [The State]: [E.F.], I want to draw your attention to the timeframe of when you moved into [the residence] with [Debrow] and your two sisters and your mom, okay?
>
> At any point from when you moved in, had you learned anything or heard anything that led you to be on alert that night on [the date of the alleged sexual assault of A.B.]?
>
> [E.F.]: Yes.
>
> [The State]: And were those based on things your sisters had mentioned?
>
> [E.F.]: No.
>
> [The State]: Are those things that you heard from your mom?
>
> [E.F.]: It's things that I --
>
> [The State]: -- I don't want to get into that --

¶18 We pause here to note that, at that point, the trial transcript states: "(Unreportable simultaneous interjections by Counsel.)" Regardless, after E.F. left the witness stand and the jury was excused, the circuit court explained that, when E.F. finished his answer after stating "It's things that I --" and was interrupted by the State, the court heard E.F. say the words "I looked on CCAP," and the court continued by stating: "that's where I think the jury couldn't possibly have heard anything else." Both attorneys agreed with the circuit court's recollection. As a result, the record establishes that E.F. stated in the jury's presence the full answer of: "It's things that I -- I looked on CCAP."

¶19     We now return to the events at trial immediately after the simultaneous interjections of counsel.  The transcript continues:

> THE COURT:  -- yeah, we can't get --
>
> [The State]:  -- [E.F.], I don't want to get into that.
>
> THE COURT:  You got to be responsive to the ques --

Still in the presence of the jury, Debrow objected and moved to strike E.F.'s response, and defense counsel stated that he would have "[a]nother motion in a minute."  The circuit court and E.F. then had the following exchange:

> THE COURT:  I'll -- I'll move to strike.
>
> The question was were those things you heard from your mother, and if you can just give yes or no as far as whether those were things you heard from your mother. We can't get into what they are, because that's hearsay.
>
> [E.F.]:  Well, my mom did tell me --
>
> THE COURT:  -- all right, that's fine. That's all.
>
> [The State]:  I just wanted to say --
>
> THE COURT:  -- that's all --
>
> [The State]:  -- yes or no.
>
> THE COURT:  We can't -- we can't put her words into your mouth in front of the jury.  That's why she's a witness if she testifies.

After the State had no further questions for E.F., the circuit court told the jury:

> [T]o the extent that -- as the State was -- was raising an interjection the answer beyond what he gave just now will be -- I'll direct the jury to strike anything else that they -- they heard beyond the witness's statement that he heard from his mother but not the content of anything.

¶20 Shortly thereafter, outside the presence of the jury, Debrow moved for a mistrial, arguing that E.F.'s response to the State's question caused the jury to assume that Debrow had a prior conviction for sexual assault listed on CCAP and that the jury could not disregard that information after hearing it. The State responded that a mistrial was not necessary because it was "hard" "knowing" what "the jury could have heard" and because of the circuit court's just-quoted instruction to the jury.

¶21 The circuit court denied Debrow's motion for a mistrial. The court provided four reasons for its decision. First, the court concluded that there is no way to know if any of the jurors know what CCAP is. Second, E.F. did not explicitly state the nature of the information he saw on CCAP and, according to the circuit court, the jury would not necessarily infer that Debrow had a prior conviction because CCAP displays many types of court records, including small claims, civil, and divorce records. Third, the court concluded that E.F.'s response had been "overridden in ways that directed the jury's attention, not to the substance, but to the fact that what was being offered was someone else's statement." Finally, the court stated that there are "less drastic measures than a mistrial" and concluded that it had instructed the jury to disregard E.F.'s response.

## B. Applicable Authorities.

¶22 "A motion for mistrial is committed to the sound discretion of the circuit court." *State v. Ford*, 2007 WI 138, ¶28, 306 Wis. 2d 1, 742 N.W.2d 61. "The [circuit] court must determine, in light of the whole proceeding, whether the claimed error was sufficiently prejudicial to warrant a new trial." *State v. Ross*, 2003 WI App 27, ¶47, 260 Wis. 2d 291, 659 N.W.2d 122. We will reverse the

denial of a motion for mistrial on a clear showing of an erroneous exercise of discretion by the circuit court.  *Id.*

¶23    Evidence of a defendant's prior offenses or convictions may be unfairly prejudicial to a defendant.  *State v. Warbelton*, 2009 WI 6, ¶51, 315 Wis. 2d 253, 759 N.W.2d 557.  "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."  *State v. Alexander*, 214 Wis. 2d 628, ¶21, 571 N.W.2d 662 (1997) (quoted source omitted).  As our supreme court has recognized:

> Evidence of prior convictions may lead a jury to convict a defendant for crimes other than the charged crime, convict because a bad person deserves punishment rather than based on the evidence presented, or convict thinking that an erroneous conviction is not so serious because the defendant already has a criminal record.  A jury is likely to rely on the prior convictions as evidence of a defendant's bad character so as to "deny him [or her] a fair opportunity to defend against a particular charge."

*Id.*, ¶23 (citations omitted); *see also Kwosek v. State*, 60 Wis. 2d 276, 281, 208 N.W.2d 308 (1973) ("[S]uch evidence has a tendency to prejudice the jury's mind and to lead them to conclude that because the defendant acted wrongly in the past it is likely he [or she] also committed the offense charged."); *State v. Rutchik*, 116 Wis. 2d 61, 67-68, 341 N.W.2d 639 (1984) ("[T]he jury is not permitted to convict someone based on the inference that if he [or she] broke the law once he [or she] is likely to do so again.").

## C. Analysis.

¶24    For the following reasons, we conclude Debrow has made a "clear showing" that the circuit court erred in denying Debrow's mistrial motion because,

in light of the whole proceeding, E.F.'s pertinent testimony was "sufficiently prejudicial to warrant a new trial." *See Ross*, 260 Wis. 2d 291, ¶47. In our analysis we are mindful that only one juror needs to harbor a material prejudice in order to impair a criminal defendant's right to an impartial jury. *See State v. Messelt*, 185 Wis. 2d 254, 277-78, 518 N.W.2d 232 (1994) ("[C]riminal defendants have the right not only to an impartial jury, but also to a unanimous verdict.... Material prejudice on the part of even a single juror can impair these rights."); *see also State v. Mahajni*, No. 2017AP1184, unpublished slip op. ¶10 (WI App June 27, 2019).

¶25 We begin our analysis with several propositions that are not in dispute on appeal. First, the State does not dispute that the evidence of Debrow's prior conviction was unfairly prejudicial to Debrow, and that the circuit court properly excluded that evidence before trial testimony began. Second, the State does not dispute that the circuit court's order was in force at the time of E.F.'s testimony, and the pertinent portion of E.F.'s testimony violated that order. Third, the State does not dispute that the jury would have interpreted E.F.'s testimony to mean that he "learned" information from the CCAP website.[7] More specifically,

---

[7] The circuit court questioned whether any of the jurors "know what CCAP is." We disagree with this speculative assertion on the part of the circuit court, and the State does not rely on this assertion on appeal. It is highly unlikely that all twelve members of the jury were completely unfamiliar with the term "CCAP." Further, it cannot be reasonably concluded that all jurors were unfamiliar with the fact that the CCAP website contains court records and allows the public access to criminal court records.

The State also contends on appeal that, according to the circuit court, "there was no indication as to what the jurors actually heard" regarding E.F.'s pertinent testimony. Contrary to this assertion, however, the circuit court never questioned that the jury heard E.F. state that "I looked on CCAP" as part of his answer. The court stated: "I heard the words I looked on CCAP, and that's where I think the jury couldn't possibly have heard anything else." Indeed, as noted, counsel for the parties agreed at trial that E.F. gave that testimony. As a result, we reject this contention from the State.

the State asked E.F. if, after he moved to the apartment with his mother, two sisters, and Debrow, he had "learned anything" that led him "to be on alert" the night A.B. was allegedly assaulted by Debrow, and E.F. answered, "Yes." The circuit court stated that E.F. testified that he learned that information when he "looked on CCAP." Fourth, the State does not dispute that the logical inference from this testimony was that the information E.F. learned from looking at the CCAP website concerned Debrow. In the context of the charges against Debrow, the testimony to that point in the trial, E.F.'s testimony that he was "on alert" that night because of the information he learned on CCAP, and his testimony that he was watching his sisters' bedroom door, the only reasonable conclusion a juror could draw is that the information E.F. learned from the CCAP website concerned Debrow.

¶26 We next consider disputed propositions regarding E.F.'s pertinent testimony. The circuit court concluded, and the State argues on appeal, that the jurors may have presumed that E.F.'s testimony was referring to non-criminal court records available on CCAP, such as small claims, civil, or divorce cases. That conclusion of the circuit court is highly unlikely based on the record and reasonable assumptions about the jurors. As stated earlier, E.F. answered "yes" to the following question from the State: "At any point from when you moved in, had you learned anything or heard anything that led you to be on alert that night [of the alleged sexual assault of A.B.]?" Shortly thereafter, reasonably construed, E.F. told the jury that he learned information about Debrow from looking at the CCAP website that put him on alert. Based on the context of the prosecutor's question, the charges against Debrow, the testimony to that point in the trial, and the fact that E.F. testified he was watching the door to his sisters' bedroom during the night, by far the most reasonable likely inference from E.F.'s response was that

13

E.F. was aware of a criminal conviction against Debrow. It defies reasonable assumptions to conclude that E.F.'s CCAP research would have caused him to pay close attention to Debrow's potential entry into the room of A.B. and C.D. if he had only learned about non-criminal proceedings against Debrow such as an eviction action or a divorce.

¶27 When a prior conviction is "similar or of the same nature or character as the charged crime, the risk of unfair prejudice is particularly great." *Alexander*, 214 Wis. 2d 628, ¶21. Debrow argued in the circuit court and contends on appeal that jurors reasonably deduced that E.F. had viewed on CCAP a prior criminal conviction against Debrow involving sexual assault of a child. We conclude that at least one juror would reasonably make a related deduction because Debrow was on trial for sexual assaults of two children, E.F.'s testimony described Debrow entering the bedroom of A.B. and C.D. at night, and E.F. was "on alert" watching that bedroom door. Put another way, given the connection the State was attempting to draw between E.F.'s knowledge of Debrow's past conduct and his reasons for being concerned about Debrow's entry into his younger sisters' bedroom, it is reasonably likely that at least one juror inferred that Debrow's prior conviction involved sexual misconduct involving a child.

¶28 We now summarize our analysis to this point: The circuit court properly concluded before testimony began that evidence of Debrow's prior conviction for first-degree sexual assault of a child was "unfairly prejudicial" to Debrow, and such evidence was excluded; E.F.'s pertinent testimony heard by the jury violated that order; one or more jurors would have known that the CCAP website has criminal court records that are available to the public; and one or more jurors would have reasonably understood that E.F. was "on alert" about Debrow and was watching the door to his minor sisters' bedroom at night because E.F.

14

learned from the CCAP website that Debrow had a prior criminal conviction related to sexual misconduct involving a child. Those conditions support our conclusion that, in light of the whole proceeding, E.F.'s pertinent testimony was "sufficiently prejudicial to warrant a new trial." *See Ross*, 260 Wis. 2d 291, ¶47.

¶29    Nonetheless, the State argues on appeal, and the circuit court concluded, that those conditions were ameliorated by the instruction given to the jury by the circuit court immediately after E.F. testified and a statement from the circuit court to the jury regarding hearsay evidence. We reject each argument for the following reasons.

¶30    The circuit court concluded that E.F.'s pertinent testimony did not affect the jury's decision because the jury was given an instruction by the court shortly after E.F. testified. We disagree.

¶31    It is a well-established principle that "[w]hen a circuit court gives a proper" instruction, "appellate courts presume that the jury followed that instruction and acted in accordance with the law." *State v. Gary M.B.*, 2004 WI 33, ¶33, 270 Wis. 2d 62, 676 N.W.2d 475. However, this presumption is explicitly predicated on the common sense observation that the circuit court must give the jury a "proper" or "sufficient" curative instruction. *See id.*, ¶¶29, 33; *see also State v. Williamson*, 84 Wis. 2d 370, 391, 267 N.W.2d 337 (1978) (holding that a new trial may not be necessary if a "sufficient curative instruction was given"), *declined to follow on other grounds*, *Manson v. State*, 101 Wis. 2d 413, 422, 304 N.W.2d 729 (1981). A curative instruction is improper or insufficient if the instruction does not both sufficiently identify the prejudicial evidence that the jury is to disregard and instruct the jury in clear terms that the jury must not consider that evidence. *State v. Penigar*, 139 Wis. 2d 569, 581-82, 408 N.W.2d

28 (1987); *cf.* ***State v. Sullivan***, 216 Wis. 2d 768, 780, 790-92, 576 N.W.2d 30 (1998) (holding that the circuit court's instruction regarding other acts evidence was "too broad" and "insufficient to cure the prejudicial impact" because the court "did not tailor" the instruction "to the facts of the case"); ***Peters v. State***, 70 Wis. 2d 22, 32, 233 N.W.2d 420 (1975), *disapproved of on other grounds by* ***State v. Poellinger***, 153 Wis. 2d 493, 504-05, 451 N.W.2d 752 (1990) (holding that the circuit court's instruction regarding evidence was insufficient because the jury "was not clearly and unequivocally instructed" that it must not consider certain delineated evidence in its deliberations and such an instruction "must be given in clear and certain terms").

¶32    For example, in ***Penigar***, the defendant was initially charged with second-degree sexual assault causing a venereal disease contrary to WIS. STAT. § 940.225(2)(b).[8]  ***Penigar***, 139 Wis. 2d at 574.  To prove that the defendant caused the disease, the victim testified at trial that she did not have sexual intercourse before or after the assault.  *Id.* at 575.  The State at trial amended the charge to third degree sexual assault contrary to § 940.225(3) (1985-86),[9] and the parties agreed that the victim's prior testimony regarding sexual intercourse before or after the assault was not relevant to the amended changes and should have been stricken.  *Id.* at 578.  The circuit court concluded that the victim's testimony did

---

[8] At the time ***State v. Penigar***, 139 Wis. 2d 569, 408 N.W.2d 28 (1987), was decided, WIS. STAT. § 940.225(2)(b) (1985-86) provided as follows:  "Whoever does any of the following is guilty of a Class C felony:  … (b) Has sexual contact or sexual intercourse with another person without consent of that person and causes injury, illness, disease or impairment of a sexual or reproductive organ, or mental anguish requiring psychiatric care for the victim."  Sec. 940.225(2)(b) (1985-86).

[9] At the time ***Penigar*** was decided, WIS. STAT. § 940.225(3) (1985-86) provided:  "Whoever has sexual intercourse with a person without the consent of that person is guilty of a Class D felony."  Sec. 940.225(3) (1985-86).

not necessitate a new trial because the jury had been provided a curative instruction to disregard that evidence. *Id.* at 581. The court's instruction to the jury explained that the charge was being amended because there was insufficient evidence of venereal disease and instructed the jury to "disregard the evidence which bore on the subject of whether or not the defendant caused a disease of a sexual or reproductive organ." *Id.* Our supreme court held that this instruction was "inadequate" because it "did not explicitly direct the jury to disregard the laboratory tests" and "did not expressly or even by implication direct the jury to disregard the complainant's testimony about her lack of prior sexual experience." *Id.* at 581-82. The supreme court determined that the jurors would have reasonably believed that they "need disregard only the laboratory evidence to which the circuit court had made reference and the complainant's testimony about the state of her health," and that the jury need not disregard the victim's testimony about her lack of prior sexual experience. *Id.*

¶33 With those authorities in mind, we repeat that the jury received the following instruction from the circuit court soon after E.F.'s pertinent testimony:

> And -- and to the extent that -- as the State was -- was raising an interjection the answer beyond what he gave just now will be -- I'll direct the jury to strike anything else that they -- they heard beyond the witness's statement that he heard from his mother but not the content of anything.

As in *Penigar*, the circuit court's instruction given to the jury immediately after E.F. testified does not sufficiently identify the evidence that the jury was to disregard. *See id.* Rather, the instruction "directs" the jury to themselves "strike" "anything else that they … heard beyond the witness's statement that he heard

from his mother."[10]  More particularly, the language is difficult to understand and does not identify for the jurors (clearly or otherwise) the testimony that was to be disregarded—*i.e.*, E.F.'s testimony that he learned information on CCAP about Debrow that put him on alert and he was watching his sisters' room because of it. Importantly, the court's instruction includes at the end the phrase "but not the content of anything."  This added language muddies the already unclear instruction, and it is likely that language confused the jurors further as to which testimony they were to "strike."  A reasonable juror would have interpreted this particular language as directing the jury to "strike" certain testimony, but to not strike the content of that testimony.  *Cf. Peters*, 70 Wis. 2d at 32 (in case involving joinder of charges, holding that the jury must be "clearly and unequivocally instructed" and the cautionary instruction "must be given in clear and certain terms").[11]

¶34     Further, as alluded to already, the unclear language of the instruction left the jury without clear guidance as to the circuit court's directions.  The court only directed the jury to "strike" "anything else that they … heard."  The use of the term "strike" was quite obscure to any juror in this context.[12]  The jurors were no doubt left to wonder the meaning of this directive, and if it was to affect in any way the information they could properly consider during deliberations.  As a

---

[10] The State does not contend that the first 24 words of the above-quoted instruction would have been meaningful to the jury.

[11] We are aware of the burdens placed on circuit courts, including time and other pressures to manage and keep a jury trial moving to a conclusion.  However, that awareness does not allow this court to overlook the record or not consider controlling authorities.

[12] In addition, as already noted, in the presence of the jury the circuit court itself "move[d]" to "strike" the pertinent testimony of E.F.

result, the circuit court failed to properly instruct the jury about E.F.'s pertinent testimony as the directive was not "given in clear and certain terms." *Peters*, 70 Wis. 2d at 32.

¶35    Next, the circuit court concluded that the jury likely did not interpret E.F.'s testimony as referring to a prior criminal conviction against Debrow because the court directed the jury's attention away from the substance of E.F.'s statement. We disagree. The specific exchange that occurred prior to the court's instruction to the jury was:

> THE COURT:  I'll – I'll move to strike.
>
> The question was were those things you heard from your mother, and if you can just give yes or no as far as whether those were things you heard from your mother. We can't get into what they are, because that's hearsay.
>
> [E.F.]:  Well, my mom did tell me --
>
> THE COURT:  -- all right, that's fine. That's all.
>
> [The State]:  I just wanted to say --
>
> THE COURT:  -- that's all --
>
> [The State]:  -- yes or no.
>
> THE COURT:  We can't -- we can't put her words into your mouth in front of the jury.  That's why she's a witness if she testifies.

Although the court may have been attempting to divert the jury's attention away from the substance of E.F.'s response, it is unlikely that such an attempt was effective at negating the unfair prejudice. In other words, it is unlikely that the jurors who understood the implication of E.F.'s testimony would have forgotten that testimony because the court stated that it had interrupted E.F.'s answer on hearsay grounds. By mentioning hearsay, the court obfuscated what the jury was

19

supposed to do with this unfairly prejudicial testimony. *See Penigar*, 139 Wis. 2d at 581-82 (curative instruction must sufficiently identify the evidence that the jury is to disregard). Thus, the court's comments about hearsay prior to its instruction to the jury do not alter our conclusion that the circuit court erred in denying Debrow's mistrial motion.

¶36 In sum, E.F.'s pertinent testimony was unfairly prejudicial to Debrow and violated the circuit court's order that evidence of Debrow's prior conviction be excluded from evidence. The court's attempts to cure the prejudicial effect of this testimony were insufficient and did not properly instruct the jury to disregard that testimony when deliberating. Thus, the circuit court erroneously exercised its discretion in denying Debrow's motion for a mistrial.[13]

¶37 Our conclusion that the circuit court erroneously exercised its discretion in denying Debrow's mistrial motion is sufficient to warrant a new trial, and we ordinarily would not reach Debrow's remaining arguments. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive."). Nevertheless, we will address those arguments because those may be raised again on remand.

---

[13] The State does not make a harmless error argument regarding the circuit court's denial of Debrow's mistrial motion based on E.F.'s testimony. Accordingly, the State has forfeited any such argument on appeal. *Waushara Cnty. v. Graf*, 166 Wis. 2d 442, 451, 480 N.W.2d 16 (1992) ("[A]ppellate courts need not and ordinarily will not consider or decide issues which are not specifically raised on appeal."); *see State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) ("We cannot serve as both advocate and judge.").

## II. The Circuit Court Did Not Erroneously Exercise Its Discretion in Admitting Evidence.

¶38    Debrow argues that the circuit court erred in admitting the following evidence:  (1) a text message and a recorded phone call indicating that Debrow searched for and watched a pornographic video that was found on his computer; and (2) other acts evidence indicating that, on an occasion separate from the charged act, A.B. awoke to find Debrow in her room during the night.

¶39    A circuit court's decision to admit or exclude evidence is reviewed under an erroneous exercise of discretion standard.  *Ford*, 306 Wis. 2d 1, ¶30.  "In making evidentiary rulings, the circuit court has broad discretion."  *State v. Chamblis*, 2015 WI 53, ¶20, 362 Wis. 2d 370, 864 N.W.2d 806.  As with other discretionary determinations, we "will uphold a decision to admit or exclude evidence if the circuit court examined the relevant facts, applied a proper legal standard, and, using a demonstrated rational process, reached a reasonable conclusion."  *Id.*

¶40    We next address Debrow's arguments, beginning with the admission of the evidence regarding the pornographic video.

### A.  Pornographic Video Evidence.

¶41    Prior to trial, Debrow moved to exclude from evidence presented to the jury text messages and a recorded phone call between Debrow and G.H. in which G.H. confronted Debrow about pornography she found on his computer. This evidence indicated that Debrow had on his computer a pornographic video titled "Stepdaughter is scared to get fucked while wife sleeps."  Debrow argued that this evidence was not relevant because it suggested intercourse, which was not part of the charged offenses.  Debrow also argued that, even if the evidence was

21

relevant, it was unfairly prejudicial because it risked the jury convicting him based on the video title alone. The State responded that the evidence was relevant to Debrow's intent and sexual gratification, elements of the charged offenses,[14] and was not unfairly prejudicial. The circuit court agreed with the State and denied Debrow's motion to exclude this evidence. In its ruling, the court presumed that Debrow chose particular search terms in searching for the video and determined that the evidence was relevant to the allegations against Debrow because the nature of the search terms Debrow likely used to find the video tended to establish the element of sexual gratification based on the facts alleged in this case.

¶42 The State called G.H. as a witness, and she testified that, after Debrow had been arrested, she looked on his computer and discovered that he had on the computer a pornographic video titled "Stepdaughter scared to get fucked while wife sleeps." The State introduced into evidence text messages between G.H. and Debrow in which G.H. confronted Debrow about the video. In these text messages, Debrow did not deny watching the video and stated that he "watched all type[s] of shit like stepbrother fucked sister." The State later introduced a recording of a jail call in which Debrow and G.H. discussed the pornographic video on Debrow's computer.

¶43 On appeal, Debrow argues that the circuit court erroneously admitted this evidence. As noted earlier, Debrow moved to exclude this evidence

---

[14] Both WIS. STAT. § 948.02(1)(e) and WIS. STAT. § 948.02(2) refer to "sexual contact." Evidence of sexual gratification may be used to prove "sexual contact." *See* WIS. STAT. § 948.01(5)(a) (defining "sexual contact" as: "Any of the following types of intentional touching, whether direct or through clothing, if that intentional touching is either for the purpose of sexually degrading or sexually humiliating the complainant or *sexually arousing or gratifying the defendant*") (emphasis added)).

22

prior to trial and the court ruled that the evidence is admissible because it is relevant to the "sexual gratification" element of second-degree sexual assault. The circuit court reasoned that the "mere fact of possession of pornography on a computer" is not relevant, but that Debrow used search terms to access the video was relevant because its probative value outweighed the risk of prejudice:

> The search terms which originate from the user were chosen according to this testimony, we presume, by Mr. Debrow in searching and those terms involve highly relevant factors that are present in the accusations here.
>
> ….
>
> … [T]he fact that he utilized search terms, "stepdaughters assaulted while mother is sleeping" or anything of that nature … that's relevant to the sexual gratification element.

¶44 Debrow contends that this evidence is not admissible because there is no conclusive evidence that he used search terms to seek out the video.[15] We disagree with Debrow's contention. The evidence proffered by the State reasonably supports an inference that Debrow used search terms in a search engine to find that video. Further, as noted by the circuit court, the search terms that are reasonably implied by this evidence likely involve "factors that are present in the accusations" against Debrow and increase the probability that Debrow's conduct in this case was for the purpose of sexual gratification. Accordingly, this evidence is relevant, and admissible, because it tends to support an element of the charged offense. *See* WIS. STAT. § 904.01 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the

---

[15] Debrow does not argue that evidence about the pornographic video is inadmissible other acts evidence pursuant to the *Sullivan* analysis, *State v. Sullivan*, 216 Wis. 2d 768, 780, 790-92, 576 N.W.2d 30 (1998), discussed in the next section of this opinion.

determination of the action more probable or less probable than it would be without the evidence.").

¶45    Moreover, as the State correctly observes, Debrow's argument regarding the lack of conclusive evidence that he used particular search terms bears on the weight that the jury may give the evidence, not its admissibility. *See State v. Jones*, 2018 WI 44, ¶31, 381 Wis. 2d 284, 911 N.W.2d 97 ("[T]he court's role is to admit evidence that meets the prescribed standards, which the factfinder then weighs to ascertain the truth."). In other words, the lack of conclusive evidence that Debrow used particular search terms may undercut the inference that he acted for the purpose of sexual gratification, but it does not render the evidence proffered by the State inadmissible.

¶46    In sum, Debrow has failed to demonstrate that the circuit court erred in exercising its discretion in admitting into evidence the text messages and phone call recording.

## B. Other Acts Evidence.

¶47    Prior to trial, the State moved to admit evidence of acts other than the charged offenses. Germane to this appeal, the State indicated that it planned to introduce evidence of a separate incident in which Debrow entered A.B.'s bedroom at night, causing her to wake up and scream. The State argued that it was introducing this evidence to show a "[c]ommon plan, scheme, design, intent, context, and absen[ce] of mistake," and that the probative value of the evidence was not outweighed by the risk of unfair prejudice. Debrow opposed the motion, arguing that the other acts were highly prejudicial and had little relevance to the charged offense. The circuit court determined that the evidence was relevant and

that the probative value outweighed the risk of prejudice and granted the State's motion.

¶48 On appeal, Debrow argues that the circuit court erroneously admitted this evidence. Wisconsin courts follow a three-step test to determine whether such other acts evidence is admissible. *Sullivan*, 216 Wis. 2d at 772-73. Under this test, other acts evidence is admissible if: (1) it is offered for a permissible purpose pursuant to WIS. STAT. § 904.04(2)(a); (2) it is relevant pursuant to WIS. STAT. § 904.01; and (3) its probative value is not substantially outweighed by the risk or danger of unfair prejudice pursuant to WIS. STAT. § 904.03. *State v. Marinez*, 2011 WI 12, ¶19, 331 Wis. 2d 568, 797 N.W.2d 399 (citing *Sullivan*, 216 Wis. 2d at 772-73). "Once the proponent of the other-acts evidence establishes the first two [steps] of the test, the burden shifts to the party opposing the admission of the other-acts evidence to show that the probative value of the evidence is substantially outweighed by the risk or danger of unfair prejudice." *Id.*

¶49 The first step in the *Sullivan* analysis is satisfied if the evidence is "offered for a purpose not associated with proving an individual's character and propensity to act in conformity therewith." *State v. Payano*, 2009 WI 86, ¶62, 320 Wis. 2d 348, 768 N.W.2d 832 (citing WIS. STAT. § 904.04(2)). "As long as the proponent identifies one acceptable purpose for admission of the evidence that is not related to the forbidden character inference, the first step is satisfied." *Id.*, ¶63 (footnote omitted). Here, the State offered the evidence that Debrow had previously entered A.B.'s room at night while A.B. was sleeping for the purpose of showing "plan or a lack of mistake on Debrow's part" and "opportunity." The circuit court agreed that those were acceptable purposes. On appeal, Debrow does not dispute that this other acts evidence was offered for a permissible purpose.

25

Accordingly, we conclude that the court properly exercised its discretion in determining that the State satisfied its burden under this first step of the analysis.

¶50     The second step of the *Sullivan* analysis requires a court "to assess whether the evidence is relevant as defined by WIS. STAT. § 904.01." *Id.*, ¶67. Under § 904.01, "'[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Sec. 904.01.   "Because other acts evidence is inherently relevant to prove character and therefore a propensity to behave accordingly, '*the real issue is whether the other act is relevant to anything else*.'" *Payano*, 320 Wis. 2d 348, ¶67 (quoted source omitted).

¶51     Our supreme court has explained that this step of the *Sullivan* analysis is met if the following two questions are answered affirmatively:  "(1) is the proposition for which the evidence is offered of 'consequence to the determination of the action' and (2) does the evidence have probative value when offered for that purpose?" *Id.*, ¶68 (quoted source omitted); *see also Sullivan*, 216 Wis. 2d at 772.   Under the first prong, "the court must focus its attention on the pleadings and contested issues in the case." *Payano*, 320 Wis. 2d 348, ¶69.  "The pleadings set forth the elements of the claims, charges, or defenses.  Unless parties stipulate or fail to contest them, all such elements as well as any propositions tending to establish them are fairly in dispute." *Id.*  The second prong "must be determined by the trial judge in view of his or her experience, judgment and knowledge of human motivation and conduct." *Id.*, ¶70 (quoting *State v. Pharr*, 115 Wis. 2d 334, 344, 340 N.W.2d 498 (1983)).  "Although some other acts cases focus 'on the other incident's nearness in time, place and circumstances to the alleged crime or to the fact or proposition sought to be proved,' '[s]imilarity' and

26

'nearness' are not talismans. Sometimes dissimilar events will be relevant to one another." *Id.* (citations and quoted source omitted).

¶52    In the present case, as noted, the State moved to admit evidence of a separate occasion in which Debrow entered A.B.'s bedroom at night causing her to wake up and scream.  The circuit court found that this evidence was relevant because it tended to establish that Debrow's intent in touching A.B. on the charged occasion was for sexual gratification, an element of second-degree sexual assault pursuant to WIS. STAT. § 948.02(2).  The court explained that this act is "very probative" of sexual gratification because it tends to prove that Debrow acted with intent and that Debrow had "repeated opportunities" to take advantage of the living situation in G.H.'s home.

¶53    On appeal, Debrow argues that the other acts evidence is not relevant under the second step in the *Sullivan* analysis.  As to the first prong of the second step, Debrow does not dispute that the element of sexual gratification "is of consequence to the determination of the action" or that the State offered the other acts evidence in relation to that element.  *See Payano*, 320 Wis. 2d 348, ¶69. Rather, Debrow focuses only on the second prong and argues that the other acts evidence is not probative of the sexual gratification element because there is no evidence that he touched A.B. during the prior incident.  Debrow contends that, without this evidence, the prior incident is not sufficiently similar to the charged incident and is merely an "insinuation" or "innuendo" that Debrow touched A.B. in an improper way.  Debrow argues that the other acts evidence does "not make it more likely that [he] improperly touched [A.B.]" as charged and does not increase the probability that he acted for sexual gratification during the charged incident.

¶54    We conclude that Debrow has not sufficiently demonstrated that the circuit court erroneously exercised its discretion in determining that the other acts evidence is relevant.  As discussed earlier, the probative value of other acts often depends "on the other incident's nearness in time, place and circumstances to the alleged crime or to the fact or proposition sought to be proved."  *Id.*, ¶70; *Sullivan*, 216 Wis. 2d at 786.  Here, the prior incident involving A.B. was similar to the alleged crime in a number of respects, including the location, time of day, persons involved, and circumstances surrounding the act.  As the State correctly observes, these similarities are appropriate considerations because those increase the probability that the alleged crime was planned, that there was no mistake as to Debrow's conduct, and that there was an opportunity for Debrow to commit the alleged crime.  Although the record contains no evidence that Debrow touched A.B. during the prior incident, this evidentiary deficiency does not render the evidence of that prior incident irrelevant.  Rather, that deficiency may diminish the probative value and the weight that the jury could give to the evidence of the prior act.  Accordingly, we conclude that Debrow has failed to demonstrate that the court erroneously exercised its discretion in determining that the others acts evidence is relevant under the second step of the *Sullivan* analysis.

¶55    Under the third step of the *Sullivan* analysis, other acts evidence that satisfies the first two steps is admissible unless the opponent demonstrates that "its probative value is *substantially outweighed* by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  *Payano*, 320 Wis. 2d 348, ¶80 (quoting WIS. STAT. § 904.03).  Here, the circuit court determined that the probative nature of the prior incident was not substantially outweighed by its prejudicial effect.  On appeal, Debrow does not develop an

argument that this evidence is unfairly prejudicial or that the court erroneously exercised its discretion in making its determination about the third step of the *Sullivan* analysis. We will not develop this argument for Debrow. *Pettit*, 171 Wis. 2d at 647.[16]

¶56 In sum, Debrow has failed to establish that the circuit court erroneously exercised its discretion in admitting evidence of Debrow's other act involving A.B.[17]

## CONCLUSION

¶57 For the foregoing reasons, the judgment of the circuit court is reversed. Although the court did not erroneously exercise its discretion regarding the admission of the evidence about the pornographic video and the above-described other act, it erroneously exercised its discretion regarding the motion for a mistrial. This matter is remanded for a new trial and further proceedings consistent with this opinion.

---

[16] We note that the State argues that the greater latitude rule applies in this case. This rule allows for more liberal admission of other acts evidence in cases involving sexual abuse, especially those involving children. *See State v. Dorsey*, 2018 WI 10, ¶32, 379 Wis. 2d 386, 906 N.W.2d 158; WIS. STAT. §§ 904.04(2)(b)1., 939.615(1)(b). Because we conclude that Debrow's arguments fail under the *Sullivan* analysis, we need not address the effect of the greater latitude rule in this case.

[17] Because we conclude that the circuit court did not erroneously exercise its discretion in admitting the video or the other acts evidence, we need not address the State's alternative argument that the admission of that evidence was harmless error.

Debrow also argues that he is entitled to a new trial in the interest of justice because the erroneously admitted evidence "obscured the crucial issue." Because we conclude that the evidence was properly admitted—and because we reverse the circuit court's denial of Debrow's mistrial motion—we do not address the argument regarding a new trial in the interest of justice.

*By the Court.*—Judgment reversed and cause remanded with directions.

Not recommended for publication in the official reports.