STATE of Wisconsin, Plaintiff-Respondent,

v.

Marion PENIGAR, Jr., Defendant-Appellant-
Petitioner.

Supreme Court

*No. 85–1382–CR. Argued March 4, 1987.—Decided June 24,
1987.*

(Also reported in 408 N.W.2d 28.)

For the defendant-appellant-petitioner there were briefs and oral argument by *Roy LaBarton Gay,* Eau Claire.

For the plaintiff-respondent the cause was argued by *David J. Becker,* assistant attorney general, with

whom on the brief was *Bronson C. La Follette,* attorney general.

SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals filed on February 25, 1986, affirming a judgment of conviction for third degree sexual assault and an order denying a new trial. The judgment and order were entered by the circuit court for Eau Claire county, Thomas H. Barland, Circuit Judge.

This case presents two issues. The first issue is whether the erroneously admitted and false testimony of the complainant that she never had sexual intercourse prior to the disputed assault had such a pervasive effect on the trial that the real controversy has not been fully tried and the judgment of conviction should be reversed under the court's discretionary power to reverse a judgment in the interest of justice. The second issue is whether a university counselor's testimony describing the complainant's behavior (not immediately reporting the disputed assault to the police) and the defendant's behavior (remaining in the complainant's apartment after the disputed assault) as behavior typical of rape victims and assailants was admissible.

Because we conclude that the erroneously admitted and false testimony of the complainant that she had never had sexual intercourse before the disputed assault so pervasively affected the trial that the issue of consent was not fully tried, we reverse the conviction and grant a new trial in the interest of justice. Sec. 751.06, Stats. 1985–86. For the reasons set forth below, we conclude that we need not reach the issue of the admissibility of the counselor's testimony. We reverse the decision of the court of appeals affirming

the conviction and remand the cause to the circuit court for a new trial.

## I.

We put these two issues in perspective by first describing the complainant's and the defendant's testimony about the disputed assault and then describing the procedural posture of the case.

The complainant described the assault as follows. On April 18, 1984, she was studying in a bedroom of the two-story apartment she shared with two roommates, both of whom were out for the evening. At approximately 2:00 A.M. she went downstairs in response to a knock at the door. The defendant was at the door. The complainant recognized the defendant as a friend of one of her roommates to whom she had once been introduced. The defendant asked if the roommate was home and stated that the roommate had asked him to wait there for her. The complainant let the defendant into the apartment. They talked for about 15 minutes. The defendant came over to the chair where the complainant was sitting and kissed her. The complainant asked the defendant to stop and then to leave. Instead, the defendant grabbed her hands and pulled her out of the chair and said that if she was not nice to him, he would not be nice to her. The defendant pushed her onto the couch and had intercourse with her. The complainant then went upstairs to her bedroom, as instructed by the defendant. When she left at 8:00 A.M. she saw the defendant asleep on the couch in the living room.

The complainant told her roommates about the assault that evening and told a priest the following day. The complainant did not report it to the police

until nine days after it occurred because she did not want her mother to know.

The defendant's testimony differed from the complainant's in several details but the major difference was that, according to the defendant, the two of them conversed about sex and then the complainant consented to sexual intercourse and to his spending the night on the couch.

The defendant was initially charged with second-degree sexual assault, that is, sexual intercourse without the consent of the victim by use or threat of force. Sec. 940.225 (2)(a), Stats. 1985–86.[1] After the complainant testified at the preliminary hearing that she contracted gonorrhea as a result of the assault, the state amended the charge, over defendant's objection, to another form of second degree sexual assault, that is, sexual intercourse without the consent of the victim causing a venereal disease. Sec. 940.225 (2)(b).[2]

---

[1]Sec. 940.225(2)(a) reads:

"**940.225 Sexual assault.**

. . .

"(2) **Second degree sexual assault.** Whoever does any of the following is guilty of a Class C felony:

"(a) Has sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence."

[2]Sec. 940.225(2)(b) reads:

"**940.225 Sexual assault.**

. . .

"(2) **Second degree sexual assault.** Whoever does any of the following is guilty of a Class C felony:

. . .

"(b) Has sexual contact or sexual intercourse with another person without the consent of that person and causes injury, illness, disease or impairment of a sexual or reproductive organ, or mental anguish requiring psychiatric care for the victim."

To prove that the defendant caused the venereal disease, the complainant testified at trial that neither before nor after the assault had she had sexual intercourse, had any one touched her vaginal area, or had she ever touched anyone else's genitals.[3] The state, however, was unable to establish at trial to the required reasonable scientific certainty the presence of venereal disease in either the complainant or the defendant. Consequently, at the conclusion of its case in chief, the state, without any objection from the defendant, sought court permission to amend the charge to third degree sexual assault, that is, sexual intercourse without the consent of the victim. Sec. 940.225 (3), Stats. 1985–86.[4] The circuit court permitted the amendment.

[3]The victim's testimony regarding her prior sexual experience on direct examination was as follows:

"Q. Directing your attention to before April 18, 1984, to your knowledge had you ever had a sexually transmitted disease?
"A. No.
"Q. Had you ever engaged in sexual intercourse?
"A. No.
"Q. Aside from a doctor or your mother when you were a little baby, has—has another touched your vaginal area?
"A. No.
"Q. Have you ever touched anyone else's genitals?
"A. No.
"Q. Skipping over April 18, between April 18 and today, have you ever had sexual intercourse?
"A. No.
"Q. Had you touched or have you been touched in the genital areas?
"A. No."

[4]Sec. 940.225(3) reads:

"940.225 Sexual assault.

. . .

The defendant and complainant agreed that sexual intercourse had taken place. The only issue in dispute and for the jury to decide was whether the complainant had consented. Apparently concluding that the complainant had not consented to intercourse, the jury found the defendant guilty of third degree sexual assault. After the trial, and at a presentence investigation interview, the complainant admitted that she had had an incestuous relationship with two of her brothers. Her admission directly contradicted her testimony at trial that before the assault she had never had any sexual experience.

The defendant moved for a new trial on several grounds, including newly discovered evidence (that is, that the complainant's testimony was false) and the interest of justice. The state conceded that the trial testimony was false but argued that the false testimony was given erroneously, not intentionally. There was testimony that the complainant's repression of the incestuous relationships was a mechanism for coping with the trauma of incest. The circuit court denied the motion for a new trial, stating that a probability of a different result upon retrial did not exist. The court of appeals affirmed the conviction and the order denying the new trial.

## II.

Although the parties' briefs and oral arguments before this court framed the issue in various ways,[5] the

"(3) **Third degree sexual assault.** Whoever has sexual intercourse with a person without the consent of that person is guilty of a Class D felony."

[5]The parties characterized the issues variously in terms of due process, the correct administration of justice, "a fairer and more

parties' arguments revolved largely around the pervasive effect of the erroneously admitted false evidence on the trial. We believe that the issue is best stated thus: Did the erroneously admitted and false testimony of the complainant that she had never had sexual intercourse before the disputed assault have such a pervasive effect on the trial that the real controversy was not fully tried, thereby justifying reversal of the judgment of conviction in the interest of justice under sec. 751.06, Stats. 1985–86.[6]

This court has both inherent power and express statutory authority to reverse a judgment of conviction and remit the case for a new trial in the interest of justice, even where the circuit court has exercised its power to order or deny a new trial in the interest of justice. *State v. McConnohie*, 113 Wis. 2d 362, 369–71, 334 N.W.2d 903 (1983). A new trial may be in the interest of justice under sec. 751.06, this court has said, for either of two reasons: (1) the real controversy has not been fully tried; and (2) it is probable that

honourable and respected criminal justice system," plain error, prejudicial error, ineffective assistance of counsel, and the circuit court's abuse of discretion in denying a new trial.

[6]Sec. 751.06, Stats., provides as follows:

> "**751.06 Discretionary reversal.** In an appeal in the supreme court, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record, and may direct the entry of the proper judgment or remit the case to the trial court for the entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice."

justice has for any reason miscarried. One way in which the controversy may not have been fully tried is that the jury had before it evidence not properly admitted which so clouded a crucial issue that it may be fairly said that the real controversy was not fully tried. *State v. Wyss,* 124 Wis. 2d 681, 735, 370 N.W.2d 745 (1985).

Our examination of the record leads us to conclude that the complainant's testimony that she had never had sexual intercourse before April 24, 1984, so clouded the only crucial issue in this case, namely, the complainant's consent, that it may be fairly said that the real controversy was not fully tried.

We reach this issue even though the defendant did not preserve the issue for review as a matter of right. The defendant could not—and did not—object to the complainant's testimony at trial that she had never had sexual intercourse before the disputed assault. This testimony was admissible because when it was given the charge was second degree sexual assault causing a venereal disease. Sec. 972.11 (2)(b)2, Stats. 1985–86. The state and the defendant agree that this testimony became inadmissible in this case when the charge was amended to third degree sexual assault. Sec. 972.11 (rape shield law). Instead of moving for a mistrial when the charge was amended, the defendant apparently was satisfied to have the circuit court give the jury a "curative" instruction, although the instruction did not ask the jury to disregard the testimony about the complainant's virginity. Thus having failed to preserve his objection to the testimony in the circuit court that the complainant had not had sexual intercourse before the assault, the defendant lost the opportunity to have an appel-

late court review the claimed error as a matter of right.

Nevertheless an appellate court may, in its discretion, reach the merits of a party's claimed error which cannot be asserted as a matter of right on appeal. *Cf. Hartford Insurance Company v. Wales,* 138 Wis. 2d 508, 406 N.W.2d 426 (1987)(the court of appeals may in its discretion review an error even though the party did not preserve the error by presenting a timely postverdict motion).

■

Since court reorganization in 1978, this court has concluded that it has the power, in the exercise of its discretionary power to review a decision of the court of appeals, to inquire into a claimed error which was not properly preserved in the circuit court. *In Interest of C.E.W.,* 124 Wis. 2d 47, 57, n. 6, 368 N.W.2d 47 (1985). This court has stated that it may in its discretion, irrespective of any objection, elect to review an alleged error whenever the court concludes that the issue warrants the court's consideration. *State v. Shah,* 134 Wis. 2d 246, 254, n. 7, 397 N.W.2d 492 (1986).

■

Three factors lead us to conclude that we should exercise our discretionary power to review the claimed error: sec. 972.11 sets forth a strong public policy that evidence concerning the complainant's prior sexual conduct is inadmissible; many sexual assault cases come before trial and appellate courts; amendment of the charge of sexual assault during trial may occur frequently inasmuch as the sexual assault statute creates several "degrees" of sexual assault.

We agree with the parties that the complainant's testimony about her lack of prior sexual activity was erroneously before the jury in this case when the

charge was reduced to third degree sexual assault and the issue was consent. Sec. 972.11.

We turn now to the issue whether the judgment should be reversed. The doctrine of discretionary review of errors is related to but separate from the interest of justice standard for reversal of a judgement. Even if the court exercises its discretion to review whether an error was committed, this court will not reverse a judgment or order a new trial unless the claimed error is found to be an error of significance justifying reversal under one of the standards to which this court adheres. See, *e.g.,* sec. 751.06 (interest of justice), sec. 901.03 (4), Stats. 1985–86 (plain error; see *Virgil v. State,* 84 Wis. 2d 166, 267 N.W.2d 852 (1978)); sec. 805.18 (2) (prejudicial or harmless error); see *State v. Dyess,* 124 Wis. 2d 525, 370 N.W.2d 222 (1985).[7]

The prosecution asserts that the error does not justify reversal because a curative instruction cured the error, the defendant relied to his benefit on the complainant's inadmissible testimony that she had no sexual experience before the disputed assault, and a retrial without this false and inadmissible testimony would not in all probability produce a different result.

---

[7] Compare the approach in this case and in *Hartford Ins. Co. v. Wales,* 138 Wis. 2d 508, 406 N.W.2d 426 (1987), with that in *Air Wisconsin v. North Central Airlines, Inc.,* 98 Wis. 2d 301, 318, 296 N.W.2d 749 (1980), where the court discusses the two issues, discretionary review and discretionary reversal, in the order in which they appear in sec. 751.06. First the court determines whether the error claimed by the party (even though the error was not preserved) would require reversal of the judgment in the interest of justice. If the court determines that the claimed error would require reversal in the interest of justice, the court then determines whether the claimed error is in law an error. This court has used both approaches.

We conclude that the curative instruction was not sufficient in this case to cure the error. The curative instruction first explained that the laboratory test for venereal disease was insufficient to prove gonorrhea and that the trial would proceed on a third degree sexual assualt charge. The instruction then advised the jury to "disregard the evidence which bore on the subject of whether or not the defendant caused a disease of a sexual or reproductive organ."[8] The instruction appears in the margin at note 8.

The circuit court's reference to the evidence to be disregarded was generally worded. The only evidence mentioned in the curative instruction was the laboratory test for venereal disease which was insufficient to prove gonorrhea and that evidence was mentioned only in regard to explaining the need for the amendment of the charge and the curative instruction. The instruction did not explicitly direct the jury to disregard the laboratory tests. The curative instruction did

[8]The curative instruction given to the jury by the court after the state amended the charge to third degree sexual assault included the following:

"COURT: ... The state of the evidence at the end of the State's case was that the lab test which showed, or the lab test of the culture taken of C- B-, if you recall, the lab technician reported that that showed probably yes, possibly no as to the presence of gonorrhea in C- B-. The burden of proof upon the state is beyond a reasonable doubt; and an answer of probably yes, possibly no is not sufficiently high or strong to meet the burden of beyond a reasonable doubt, and it is for that reason that the motion to amend the information is granted, and we are proceeding with this trial now on the charge of third-degree sexual assault and, *therefore, you are to disregard the evidence which bore on the subject of whether or not the defendant caused a disease of a sexual or reproductive organ.*"

not expressly or even by implication direct the jury to disregard the complainant's testimony about her lack of prior sexual experience. Reasonable jurors could have thought that they need disregard only the laboratory evidence to which the circuit court had made reference and the complainant's testimony about the state of her health. We therefore conclude that the curative instruction was inadequate in this case.

The state next asserts that the complainant's testimony about her lack of prior sexual experience was as beneficial to the defense as it was to the prosecution and that the defendant should not now be permitted to complain about the admissibility of this part of the complainant's testimony. The defense consisted largely of attacking the credibility of the complainant by developing a theory to explain why the complainant believed she had not consented and by pointing out her prior inconsistent statements. In his opening statement—when the charge was still second degree sexual assault causing venereal disease—defense counsel told the jury of the complainant's strict moral upbringing, her virginity, and her feeling that she was missing something by not having a boyfriend and sexual experience. The defense used the cross-examination of the complainant to have her tell the jury about her strict upbringing, her lack of prior sexual experience, and the fact that she did not associate socially with her roommates because they drank alcoholic beverages and she did not approve of drinking. On cross-examination the defendant got the complainant to acknowledge her fear that her mother would learn that she had had sexual intercourse. Defense counsel reemphasized these points in his closing statement. The underlying thesis which the

defendant hoped the jury would accept was that the complainant consented to the sexual intercourse, that she then felt guilty for having lost her virginity, and that she chose to create a "rape scenario" to make the episode more acceptable in her own mind.

We agree with the prosecution that the defendant attempted to use the complainant's testimony about her lack of sexual experience to his advantage. We do not agree with the prosecution, however, that the defendant's use of the complainant's testimony about her lack of prior sexual experience should prevent the court from reversing the conviction. Knowing that the complainant could—and would—testify that she had never had sexual intercourse prior to the disputed assault, defense counsel had to plan his defense accordingly. The defense had to be credible and minimize the damage caused by the highly emotional and prejudicial evidence of the complainant's virginity that the state had the right to use when the evidence was initially admitted. Had the complainant's testimony about her lack of prior sexual experience not been admissible when the trial began the defendant might have used a different kind of defense. Furthermore, at the time of trial, defense counsel was unaware that the testimony about the lack of prior sexual experience was false as well as inadmissible.

Finally the prosecution urges that the defendant was not prejudiced by the false and inadmissible testimony about her lack of prior sexual experience because there is not a reasonable possibility that the outcome would have been different had the testimony not been admitted. This court may exercise its power of discretionary reversal, however, without finding

the probability of a different result on retrial when it concludes under sec. 751.06 that the real controversy has not been fully tried. *State v. Wyss,* 124 Wis. 2d 681, 735, 370 N.W.2d 745 (1985). We must decide under sec. 751.06 whether the real controversy has not been fully tried.

The prosecution used the complainant's testimony about her lack of prior sexual experience to persuade the jury that the victim would not have consented to the intercourse. During opening statement the prosecution described the complainant as having "strong moral values," and as never having "had sexual intercourse." During direct questioning and then again in closing statement the prosecution emphasized the following points from which a jury could infer that the complainant did not consent to the sexual intercourse: the complainant had never had sexual intercourse prior to the disputed assault; the complainant was a devout church-goer; she disapproved of premarital sexual intercourse on religious and moral grounds; and she had strict moral values.

In her closing statements, the prosecuting attorney noted that the complainant's personal and moral beliefs were not consistent with the defendant's claim of consent. The prosecuting attorney reminded the jury that the complainant was religious, that "she didn't agree with premarital sex," that "she didn't gallivant the way, possibly her roommates did" and that her moral code "didn't include screwing around."

The line of questioning and the opening and closing statements reinforced the complainant's testimony that she had not had sexual intercourse prior to the disputed assault, and the complainant's testimony about her lack of prior sexual experience reinforced this line of questioning and counsel's statements.

The prosecuting attorney conceded that the sole issue was consent and credibility. The underlying thesis which the prosecution hoped the jury would accept was that a "virtuous" woman is less likely to consent to intercourse than a woman who has had prior sexual experience. This is the very thesis that the courts and the legislature have rejected. In *Milenkovic v. State,* 86 Wis. 2d 272, 279, 272 N.W.2d 320 (Ct. App. 1978), a case arising before the rape shield law, the court of appeals acknowledged that courts had, at an earlier time, concluded that "'a woman of previously unchaste character is more likely to consent to an act of sexual intercourse than is a woman who is strictly virtuous.'" The court of appeals rejected that view as well as the view that prior sexual conduct is relevant to credibility.

In adopting the rape shield law, sec. 972.11, Stats. 1985–86, the legislature declared inadmissible any evidence concerning the complaining witness's prior experience of sexual intercourse or contact (except in specified instances not applicable in this case) to prevent evidence which has low probative value and is highly prejudicial from reaching the jury, as well as to encourage victims of rape to report the crime and to appear as witnesses without fear of having their past sexual history exposed to the public.

We conclude that the prosecution used the complainant's testimony about her lack of prior sexual experience in exactly the manner that caused the courts and the legislature to bar such evidence. The prosecution used the testimony about her lack of prior sexual experience to prove that the victim did not consent. This testimony was not probative of the issue of consent and was highly prejudicial.

Upon reading the record we conclude that the case hinged on false and inadmissible testimony about the complainant's lack of prior sexual experience. When consent is a determinative issue in a rape trial and the jury's decision on consent turns on testimony about the complainant's lack of prior sexual experience which is both false and inadmissible under the rape shield law,[9] the jury is rendered unable to evaluate the testimony of the complainant and the defendant—whose credibility were the crucial aspects of the trial—because inadmissible, highly prejudicial and false evidence pervaded the course of the trial. Thus we conclude that the real controversy was not fully tried because "'the circumstances of the trial prevented a fair trial of the factual issues of the case.'" *State v. Wyss,* 124 Wis. 2d 681, 738, 370 N.W.2d 745 (1985), quoting *Lorenz v. Wolff,* 45 Wis. 2d 407, 426, 173 N.W.2d 129 (1970).

### III.

The second issue relates to whether the circuit court abused its discretion in admitting the testimony of Dr. Miriam J. Hugo, a state witness. On the basis of her education and experience Dr. Hugo testified that the following behavior of the complainant and of the defendant in this case is not unusual in cases of rape: the victim fails to report the sexual assault promptly to the police; the victim testifies at trial about the assault in an emotionally detached manner; the defendant remains on the victim's premises after the

[9]Although in this case the testimony is both inadmissible and false, discretionary reversal is not necessarily dependent on the existence of both factors.

assault. Dr. Hugo further testified on cross-examination that she had no experience with persons falsely claiming to have been sexually assaulted.

The question presented by Dr. Hugo's testimony is part of a larger ongoing problem with which the courts continue to struggle: what role should the expert in human behavior play at trial?[10]

Several factors persuade us not to rule on the admissibility of Dr. Hugo's testimony. First, we have decided to reverse the conviction on other grounds and any decision about Dr. Hugo's testimony would be dictum. Second, the dictum may not be useful on retrial of this case when different expert and other testimony may be presented. Third, the defense counsel did not preserve the objection at trial and stated at a post-conviction motion hearing that his failure to object was strategic. Although appellate counsel now argues that trial counsel did not strategically waive the error, we are less apt to exercise our discretionary power to review an error if it appears that there has been a strategic waiver. Fourth, the record is unclear regarding the purpose for which the state offered the testimony.[11] Some courts have viewed admissibility as dependent on the purpose of the testimony.

[10]The Wisconsin court of appeals has discussed the admissibility of psychiatric testimony about an incest victim's behavior. See *State v. Haseltine,* 120 Wis. 2d 92, 95–97, 352 N.W.2d 673 (Ct. App. 1984).

[11]The defendant's brief asserts that the state introduced the evidence to enhance the complainant's credibility. According to the defendant, the state hoped the jury would infer that the expert believed the complainant was telling the truth, especially since the jury knew that expert's experience included counseling this alleged victim. The state's brief asserts that the evidence was introduced to rebut the jury's possible inference that the behavior

Perhaps the most persuasive reason for not reaching the issue, however, is that the parties disagree about whether Dr. Hugo's testimony is in fact "rape trauma syndrome" testimony at all.[12] The admissibili-

of the victim and the defendant was inconsistent with sexual assault. The defendant argues that there is no showing that the jurors would have made this inference.

[12]Rape trauma syndrome is generally described as the label attached to the acute stress reaction experienced by rape victims. Expert testimony about rape trauma syndrome is generally introduced to corroborate the complainant's assertion that she did not consent to intercourse or to bolster her credibility.

The defendant urges that testimony about rape trauma syndrome "or anything similar to thereto" should be excluded from trials except in very unusual cases.

Citing *Scadden v. Wyoming,* 732 P.2d 1036, — (Wyo. 1987), the state urges that the testimony at issue is not rape trauma syndrome testimony because it concerns the defendant as well as the complainant and because it is not concerned with the complainant's psychological stress reactions that are the hallmarks of the rape trauma syndrome. The state urges that while the testimony in this case be held admissible, the court should not hold all rape syndrome testimony admissible. The state's brief argues:

"... if this court denominates the evidence at issue as 'rape trauma syndrome' evidence, and if it concludes, as the state believes it will regardless of the label it attaches to the evidence, that the evidence at issue was properly admitted, this court's decision will mislead the trial courts of this state into believing that this court has approved the admission of 'rape trauma syndrome' evidence. In reality, this case will not resolve the issue whether 'rape trauma syndrome' evidence is admissible. As already noted, the admission of true 'rape trauma syndrome' evidence raises a host of problems not presented by the testimony challenged in this case. After this court's decision regarding the admissibility of the evidence at issue is handed down, there will still remain the question whether those problems should result in the exclusion of true 'rape trauma syndrome' evidence. Obfuscation of that fact by attaching the label 'rape trauma syndrome' to

ty and proper uses of "rape trauma syndrome" testimony are important and controversial issues on which state courts have divided.[13] We should not resolve the issue when the record does not clearly and sharply bring the issue into focus.

In view of these factors we conclude that this is not an opportune case to review the admissibility of testimony relating to the psychological reaction experienced by rape victims.

For the reasons set forth, in the exercise of our discretionary powers under sec. 751.06, we reverse the decision of the court of appeals and the judgment of conviction of the circuit court and remand the cause to the circuit court for proceedings not inconsistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed; the judgment of the circuit court is

the evidence at issue would frustrate the proper development of Wisconsin case law on the subject of rape trauma syndrome evidence .... The courts [that have considered the admissibility of rape trauma syndrome evidence for the purposes of proving lack of consent] appear to be pretty evenly split on admissibility of rape trauma syndrome evidence for that purpose." State's Brief, pp. 13–15.

[13]For discussions of the use of rape trauma syndrome as evidence in rape trials, see Massaro, *Experts, Psychology, Credibility, and Rape: The Rape Trauma Syndrome Issue and Its Implications for Expert Psychological Testimony,* 69 Minn. L. Rev. 395 (1985); Ross, *The Overlooked Expert in Rape Prosecutions,* 14 Toledo L. Rev. 707 (1983); Comment, *The Admissibility of Expert Testimony on Rape Trauma Syndrome,* 75 J. Crim. L. & Criminology 1366 (1984); Comment, *The Use of Rape Trauma Syndrome as Evidence in a Rape Trial: Valid or Invalid,* 21 Wake Forest L. Rev. 93 (1985); Note, *The Admissibility of Rape Trauma Syndrome Expert Testimony in Indiana,* 17 Ind. L. Rev. 1143 (1984); Note, *Rape Trauma Syndrome,* 50 Mo. L. Rev. 947 (1985).

reversed and the cause is remanded to the circuit court.

DAY, J. (*dissenting*). I dissent. Contrary to the conclusion set out by the majority, the "real controversy" in this case was "fully tried" and the decision to grant a new trial is unwarranted. The majority states:

> "Upon reading the record we conclude that the case hinged on false and inadmissible testimony about the complainant's lack of prior sexual experience. When consent is a determinative issue in a rape trial and the jury's decision on consent turns on testimony about the complainant's lack of prior sexual experience which is both false and inadmissible under the rape shield law, the jury is rendered unable to evaluate the testimony of the complainant and the defendant—whose credibility were the crucial aspects of the trial—because inadmissible, highly prejudicial and false evidence pervaded the course of the trial." (Majority opinion, at 586 (footnote omitted).

It is clear that when the charge of second-degree sexual assault under sec. 940.225(2)(b), Stats., was amended to a charge of third-degree sexual assault under sec. 940.225(3), the evidence of the victim's lack of prior sexual experience became inadmissible. As noted by the State in its brief to this court, at this point:

> "Defense counsel could have had the trial court expressly and specifically instruct the jury that it was no longer to consider the virginity evidence on the remaining charges of third-degree sexual assault. Defense counsel never requested such instruction, but rather was content with the

court's ambiguous direction to the jury to disregard all evidence 'which bore on the subject of whether or not the defendant caused a disease of a sexual or reproductive organ.'"

I agree with the State that defense counsel elected to forego such a request because counsel intended to rely on such evidence. The tack taken by defense counsel was, as the State asserts, to argue that the victim's self-image, incorporating proscriptions against premarital sex, "led [her] to believe, though it was not in fact true, that she had not consented to the intercourse, for consensual intercourse would have been alien to her character and standards...." The majority is overreaching when it, on its own initiative, relies on the first branch of sec. 751.06, to reverse a conviction in the interest of justice.

The issues raised as to the victim's prior sexual experience were raised by the Defendant before sentencing. The facts as to prior incestuous experience were brought out in an interview by a social worker (an agent from the Bureau of Community Corrections) doing a presentence investigation in this case. When asked by the social worker she volunteered the fact of some type of incestuous relationship. The social worker and the prosecutor were both convinced and so advised the trial court that she did not intentionally lie or conceal what had occurred within her family. Whether she suppressed it or regarded it outside the purview of the questions she was asked at trial it is clear it in no way altered, changed or impugned her testimony as to what went on between her and the Defendant. The trial judge did not feel that her testimony or credibility was impugned. He also made it clear on the record that in view of all the testimony

in the case, including that of her roommate and others, plus the inconsistencies in the Defendant's testimony, that a different result would not be obtained in a new trial.

This reversal by the majority "in the interests of justice" achieves the opposite result. It results in an injustice. This young woman is first victimized by the incestuous activity in her family and now is victimized by the Defendant whose long criminal record was recited by the judge before passing sentence.

In the "interest of justice," I dissent.

I am authorized to state that JUSTICE LOUIS J. CECI joins this dissenting opinion.