COURT OF APPEALS
DECISION
DATED AND FILED

December 27, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2023AP1431-CR**

STATE OF WISCONSIN

Cir. Ct. No.  2019CF183

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

PETAIA IAULUALO,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Portage County:  PATRICIA BAKER, Judge.  *Affirmed*.

Before Blanchard, Nashold, and Taylor, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. § 809.23(3).**

¶1     PER CURIAM.   Petaia Iaulualo appeals a judgment convicting him of second-degree sexual assault, strangulation and suffocation, and false

imprisonment, as well as an order denying his postconviction motion for a new trial. In his postconviction motion, Iaulualo argued that he is entitled to a new trial on two grounds: (1) the introduction of evidence regarding the victim's sexual history and the prosecutor's reference to this evidence in closing arguments were plain error because they violated WIS. STAT. § 972.11(2)(b) (2021-22)[1] (the "rape shield" statute); and (2) Iaulualo's trial counsel was constitutionally ineffective for failing to object to the introduction of evidence about the victim's sexual history and the prosecutor's reference to this evidence. After a *Machner* hearing, the circuit court denied Iaulualo's motion.[2] The court concluded that any errors in admitting evidence regarding the victim's sexual history and reference to the evidence was harmless and that Iaulualo had not shown deficient performance on the ineffective assistance of counsel claim.

¶2 We conclude that Iaulualo is not entitled to a new trial. Although the evidence introduced about the victim's sexual history and the prosecutor's references to this history were barred by the rape shield statute and were therefore erroneously admitted and referenced at trial, these errors were harmless and did not prejudice Iaulualo. Accordingly, we affirm.

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] "A *Machner* hearing is '[t]he evidentiary hearing to evaluate counsel's effectiveness, which includes counsel's testimony to explain [counsel's] handling of the case.'" *State v. Domke*, 2011 WI 95, ¶20 n.5, 337 Wis. 2d 268, 805 N.W.2d 364 (citation omitted); *see also State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

**BACKGROUND**

¶3      Iaulualo was charged with the following crimes:  second-degree sexual assault; strangulation and suffocation; false imprisonment; and battery. Each offense was charged as a repeater.  The case proceeded to a jury trial, and Iaulualo was convicted of all charges.

¶4      The following are undisputed facts established at trial.  A.B. and Iaulualo met on an online dating site.[3]  After approximately one month of electronic communications, they decided to meet at a bar on the evening preceding the early morning crimes for which Iaulualo was convicted.  Over the course of the evening, Iaulualo consumed approximately 15 alcoholic drinks, and A.B. consumed between 8 and 10 alcoholic drinks.  Between approximately 1:00 and 1:30 a.m., after several hours of drinking alcohol and visiting bars, A.B. and Iaulualo walked to A.B.'s apartment, which was several blocks away from the last bar they visited.  A.B.'s and Iaulualo's accounts differ regarding most of what followed.

¶5      At trial, A.B. testified to the following.  On the walk to A.B.'s apartment, Iaulualo was leaning on A.B. and was "swerving all over."  When they reached A.B.'s apartment, A.B. took her dog outside and left Iaulualo alone inside her apartment.  A.B. returned to her apartment, and Iaulualo was in her bedroom in her bed.  A.B. assumed that he was sleeping.  A.B. got into the other side of the bed fully clothed and discovered that Iaulualo was awake and wearing only his boxer shorts.  Iaulualo kissed A.B., removed her pants, and "started giving oral

---

[3] Pursuant to the policy underlying WIS. STAT. RULE 809.86, we refer to the victim using initials that do not correspond to her actual name.

sex" to her. A.B. initially consented to these activities but did not consent to what followed. Iaulualo then grabbed her hair and forced his penis into her mouth. A.B. asked Iaulualo to stop, but he instead threw A.B. on her back, forcefully held her down, had nonconsensual vaginal intercourse with her, and slapped A.B. in the face with an open hand multiple times. Iaulualo squeezed A.B.'s neck multiple times with one of his hands and then with both of his hands, preventing A.B. from being able to speak or call out, making it difficult for her to breathe, and causing her pain and dizziness. Iaulualo then flipped A.B. onto her stomach and had nonconsensual anal intercourse with her, causing her intense pain. When Iaulualo concluded this sexual act, he went to the bathroom, returned to the bed, and fell asleep.

¶6      At approximately 3:30 a.m., after A.B. heard Iaulualo snoring, A.B. went to the bathroom and took a photo of bruising and marks on her face. She texted the photo to two friends and an aunt, along with a message for help, and she unsuccessfully attempted to seek help from a childhood friend who lived next door in the same apartment building. A.B. returned to her apartment and slept on the couch in her living room while Iaulualo slept in A.B.'s bedroom. After A.B. awoke at approximately 8:00 a.m., one of A.B.'s friends arrived at A.B.'s apartment, told Iaulualo to get dressed and leave, and stated that the police had been called. The friend testified that Iaulualo left A.B.'s apartment before putting his shoes on and ran down the street.

¶7      A.B. contacted the police to report the battery. At that point, A.B. was unsure about whether she wanted to report the sexual assaults. The police advised A.B. to go to a hospital emergency room for a sexual assault forensic

4

exam. At the hospital, A.B. reported that she had been sexually assaulted, and she underwent a S.A.N.E. exam performed by registered nurse Amanda Ingersoll.[4] Ingersoll testified that she observed and documented approximately a dozen injuries on A.B.'s body, including on A.B.'s external and internal genitalia. Dr. Michael Curtis, an emergency physician, testified that he conducted a rectal exam of A.B. that revealed numerous external injuries around her anus and internal injuries in her rectum. Both Ingersoll and Curtis testified that the injuries they observed on A.B. were consistent with sexual assault.

¶8      In opening statements, the prosecutor referenced that A.B. had not previously engaged in anal intercourse. During A.B.'s direct examination at trial, the prosecutor asked A.B. whether she had previously engaged in anal intercourse, and A.B. responded that she had not. In his closing argument, the prosecutor again referenced A.B.'s lack of prior anal intercourse. Trial counsel did not object to the admission of this evidence or to the prosecutor's references to it.

¶9      At trial, Iaulualo testified as follows. A.B. never told Iaulualo that she did not want to engage in any of the sex acts which occurred. A.B. had retrieved a condom from her dresser, which Iaulualo put on before they engaged in vaginal intercourse. The vaginal intercourse he had with A.B. was "rough," they "talk[ed] dirty" to each other, A.B. had requested that he pull her hair and "choke" her, and he must have accidentally hit A.B. in the face but did not remember doing so. The only time A.B. asked Iaulualo to stop having vaginal intercourse with her was when she feared that the condom would break, so Iaulualo took off the first

---

[4] S.A.N.E. stands for a Sexual Assault Nurse Examiner, a specially trained nurse who conducts a forensic exam to collect evidence from an individual who presents at a hospital as having been sexually assaulted.

condom and put on the second condom that A.B. had retrieved for him to use. Iaulualo stated initially that he did not remember having anal sex with A.B. Later in his testimony, however, Iaulualo stated that he did not have anal sex with A.B. Iaulualo also stated that he was untruthful in various ways when first interviewed by officers because he was on probation, he was prohibited from consuming alcohol, and he feared being sent to jail.

¶10    The jury convicted Iaulualo of all three of the charged felony crimes as repeaters, and he was sentenced.

¶11    Iaulualo filed a postconviction motion seeking a new trial, alleging that the admission of evidence about A.B.'s lack of prior anal intercourse and the prosecutor's reference to that testimony violated the rape shield statute as set forth in WIS. STAT. § 972.11(2)(b). According to Iaulualo, these errors entitle him to a new trial under the plain error doctrine. In the alternative, Iaulualo argued that trial counsel's failure to object to the improper testimony and the prosecutor's reference to the improper testimony constituted ineffective assistance of counsel, entitling him to a new trial.

¶12    The circuit court held a ***Machner*** hearing on Iaulualo's motion. Iaulualo's trial counsel testified at the hearing that she had no strategic reason for failing to object to the introduction of evidence about A.B.'s sexual history or the prosecutor's reference to that history. In a written order orally delivered by the court, the court denied Iaulualo's motion, concluding that, although A.B.'s testimony about her sexual history and the prosecutor's reference to that history were erroneously admitted, these errors were harmless given the "overwhelming" evidence supporting Iaulualo's second-degree sexual assault conviction. The court also concluded that trial counsel was not ineffective for failing to object to the

6

testimony or the reference to the testimony.[5] Iaulualo appeals his felony convictions and the denial of his postconviction motion.[6]

## DISCUSSION

¶13    Iaulualo argues on appeal that he is entitled to a new trial on two grounds:   (1) evidence regarding A.B.'s sexual history and the prosecutor's references to this history were erroneously admitted and constituted plain error;[7] and (2) trial counsel was constitutionally ineffective for failing to object to the admission of this evidence and the prosecutor's references to it during closing arguments.

¶14    We reject Iaulualo's assertions and affirm.

---

[5] Iaulualo also argued in his postconviction motion that he was erroneously charged and convicted as a repeater for the strangulation and suffocation offense.  The State did not dispute this claim, and the circuit court amended Iaulualo's judgment of conviction to remove the repeater enhancer from the strangulation and suffocation conviction.

[6] Iaulualo's notice of appeal states that he appeals the judgment of conviction for his three felony convictions for second-degree sexual assault, strangulation and suffocation, and false imprisonment.  However, as relevant to this appeal, the rape shield statute applies only to Iaulualo's conviction for second-degree sexual assault and not to any of his other convictions. *See* WIS. STAT. § 972.11(2)(b).  On appeal, Iaulualo does not argue that the erroneously admitted evidence of A.B.'s sexual history or the prosecutor's reference to it affect any of his convictions other than the second-degree sexual assault conviction, and he sets forth no legal bases for the appeal of his strangulation and suffocation and false imprisonment convictions.  Because all of Iaulualo's arguments on appeal apply exclusively to his second-degree sexual assault conviction, we conclude that Iaulualo has abandoned any challenge to his other felony convictions. *See **A.O. Smith Corp. v. Allstate Ins. Cos.***, 222 Wis. 2d 475, 492, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised on appeal, but not briefed or argued, is deemed abandoned.").

[7] As noted, the prosecutor also made a reference to A.B.'s sexual history in his opening statement.  Although Iaulualo does not mention this additional reference in his postconviction motion or on appeal, we will consider it because it concerns the same topic that he does raise, *i.e.*, the prosecutor's improper reference to A.B.'s sexual history barred by the rape shield statute.

## I. Plain Error

¶15    For sexual assault and other specified crimes, the rape shield statute bars the introduction of evidence of, and any reference to, a victim's prior sexual conduct or opinions except under certain enumerated exceptions that neither party argues are applicable here.   WIS. STAT. § 972.11(2)(b).[8]   "Sexual conduct" is broadly defined to mean "any conduct or behavior relating to sexual activities of the complaining witness, including but not limited to prior experience of sexual intercourse or sexual contact, use of contraceptives, living arrangement and life-style."   Sec. 972.11(2)(a).[9]   Our supreme court has concluded that the exclusion of evidence of "prior sexual conduct" also excludes evidence of the lack of prior sexual conduct, including the lack of prior sexual intercourse.   *State v. Mulhern*, 2022 WI 42, ¶42, 402 Wis. 2d 64, 975 N.W.2d 209.   Iaulualo argues that the admission of evidence regarding A.B.'s sexual history of not engaging in anal intercourse and the prosecutor's references to this history violated the rape shield statute and were "plain errors" entitling him to a new trial.

---

[8]   WISCONSIN STAT. § 972.11(2)(b) states, in pertinent part, as follows:

> If the defendant is accused of a crime under [WIS. STAT. §] 940.225 …, any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury ….

[9]   We note that the prosecutor elicited testimony from A.B. that it was her custom when engaging in sexual intercourse to request the use of a condom by her partner.  As discussed in the text, evidence about a victim's prior contraceptive use is also barred by the rape shield statute. *See* WIS. STAT. § 972.11(2)(a)-(b). Because Iaulualo does not develop an argument about how this testimony relates to any of the issues he raises on appeal, we will not consider it further. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we may decline to address arguments that are undeveloped).

¶16     The plain error doctrine is recognized in WIS. STAT. § 901.03(4) and allows appellate courts to review errors that were otherwise forfeited by a party's failure to object or preserve the error for review as a matter of right.[10]   *State v. Mayo*, 2007 WI 78, ¶¶28-29, 301 Wis. 2d 642, 734 N.W.2d 115.   Wisconsin courts have not articulated a "bright-line rule" or "hard and fast classification" for the types of errors that constitute plain errors.   *Id.*, ¶29 (citation omitted).   Instead, "the existence of plain error will turn on the facts of the particular case."   *State v. Jorgensen*, 2008 WI 60, ¶22, 310 Wis. 2d 138, 754 N.W.2d 77 (quoting *Mayo*, 301 Wis. 2d 642, ¶29).   The defendant has the initial burden to show that the error is "fundamental, obvious, and substantial."   *Id.*, ¶23.   If the defendant makes this showing, the burden then shifts to the State to show that the error was harmless. *Id.*   An error is harmless if, based on the totality of the circumstances, "the State can prove 'beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'"   *Id.* (citation omitted); *see also State v. Beamon*, 2013 WI 47, ¶3, 347 Wis. 2d 559, 830 N.W.2d 681.   Whether an error is harmless presents a question of law that we review independently.   *Mulhern*, 402 Wis. 2d 64, ¶18.

¶17     Here, the State concedes that the evidence about A.B.'s sexual history violated the rape shield statute and was erroneously admitted into evidence and referenced by the prosecutor.   Nonetheless, the State argues that these errors were harmless given the substantial evidence introduced at trial to support Iaulualo's second-degree sexual assault conviction.

---

[10] WISCONSIN STAT. § 901.03(4) provides in full:  "Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the judge."

¶18 In support of its argument, the State compares this case to *Mulhern*, in which our supreme court examined the question of harmless error in the context of evidence admitted at trial that violated the rape shield statute. In *Mulhern*, the defendant was convicted of second-degree sexual assault after a jury trial. *Id.*, ¶15. The victim testified that the defendant had nonconsensual vaginal intercourse with her. *Id.*, ¶7. Following the victim's testimony, the State called a DNA analyst who testified that a vaginal swab taken from the victim during a forensic exam found the presence of male DNA, that there was not enough of a sample to determine whose DNA it was, and that, within a period of five days, the body naturally removes foreign DNA. *Id.*, ¶11. Following the DNA analyst's testimony, and over defense counsel's objections, the State recalled the victim and elicited testimony that she had not had sexual intercourse in the week prior to the assault. *Id.*, ¶12. Defense counsel was not given an opportunity to recross-examine the victim. *Id.* The defendant maintained that the alleged vaginal intercourse never happened. *Id.*, ¶14. Although our supreme court determined that the victim's testimony regarding her lack of sexual intercourse during the week prior to the assault was barred by the rape shield statute, the court concluded that the circuit court's erroneous admission of this testimony was harmless error.

¶19 In reaching this determination, our supreme court noted the non-exhaustive factors relevant in a harmless error analysis, including: "the importance of the erroneously admitted … evidence; the presence or absence of evidence corroborating or contradicting the erroneously admitted … evidence; the nature of the defense; the nature of the State's case; and the overall strength of the State's case." *Id.*, ¶43 (quoting *State v. Hunt*, 2014 WI 102, ¶27, 360 Wis. 2d 576, 851 N.W.2d 434). In applying these factors and denying the defendant's motion for a new trial, the court concluded that, even without the erroneous

admission of the victim's testimony, there was "overwhelming evidence that proves beyond a reasonable doubt that a rational jury would have found Mulhern guilty of second-degree sexual assault." *Id.*, ¶44. For example, the court relied on the following evidence: a forensic nurse's testimony about numerous physical injuries to the victim, including in her genital area, which the nurse concluded were consistent with sexual assault and the victim's recounting of what occurred; the victim's numerous contemporaneous reports of the sexual assault to the police and her family and friends; and the defendant's own testimony, including his repeated changes in testimony when he was confronted with the content of text messages that he had sent. *Id.*, ¶¶44-48.

¶20 When applying the *Mulhern* factors here, we conclude that, under the totality of circumstances, the State has met its burden of proving beyond a reasonable doubt that a rational jury would have found Iaulualo guilty of second-degree sexual assault even absent the errors. Therefore, we conclude that the errors were harmless for the reasons that follow.

¶21 Like the victim in *Mulhern*, A.B. made multiple, contemporaneous reports of being sexually assaulted. For instance, A.B. sought medical care in the emergency room later in the morning of the assaults and stated that she been sexually assaulted. A.B. reported both vaginal and anal penetration, and she recounted being slapped multiple times on her face, being choked multiple times around her neck, and having her hair pulled. She also reported experiencing significant pain in the vaginal and anal areas, as well as tingling in her lower extremities from the perpetrator forcing her legs apart.

¶22 Similar to the medical testimony offered in *Mulhern*, here, Ingersoll, the S.A.N.E. nurse who examined A.B., observed numerous injuries on and in

A.B.'s body. Ingersoll observed and documented a dozen injuries on A.B.'s body, including bruising to the left eye, neck, and left shoulder; multiple superficial tears and redness on the external genitalia; and redness and multiple internal abrasions on the vaginal wall. Ingersoll testified to the opinion that these injuries were consistent with a sexual assault.

¶23  A.B.'s physical trauma caused Ingersoll to seek assistance from Dr. Curtis, who also examined A.B. and testified that he observed bruising on A.B.'s eye, neck, and upper thigh. During the rectal exam of A.B., Dr. Curtis observed unusual, excess redness and multiple abrasions and superficial tears around the anus and in the rectum that were consistent with a sexual assault and A.B.'s account of what occurred. In essence, Ingersoll and Dr. Curtis provided compelling medical testimony at trial that corroborated A.B.'s representations that she had been sexually assaulted earlier that morning.

¶24  In addition to the reports to medical professionals, A.B. also made contemporaneous reports of the assaults to family members and friends and to police. A.B. testified as follows about numerous efforts she made to contact family members and friends for help immediately after the assaults. By A.B.'s account, once Iaulualo fell asleep and she heard him snoring at approximately 3:30 a.m., A.B. went to the bathroom and took photos of the bruising and marks on her face, which she sent by text message with a request for help to two friends and her aunt. A.B. left her apartment with her dog soon afterward in an attempt to seek help from her childhood friend and neighbor, but A.B. was unsuccessful in waking the friend. Later that morning, another friend of A.B. arrived at A.B.'s apartment, ordered Iaulualo out of the apartment, and informed him that the police had been called. That friend testified at trial that A.B. was "shaking" as she recounted what had occurred, that A.B. had said it "did not happen with consent,"

and that A.B. felt pain during the assaults and was "too scared or too frozen to move." A.B.'s parents and the police were also contacted and arrived at A.B.'s apartment later that morning. A.B. gave an account to the police of what occurred.

¶25 Moreover, like the defendant in *Mulhern*, Iaulualo was an inconsistent witness. Iaulualo initially testified during trial that he did not remember having anal intercourse with A.B. Later, he affirmatively testified that he did not have anal intercourse with A.B. During his testimony, Iaulualo acknowledged that he initially made numerous false statements to police, by his account, because he was on probation, he was prohibited from consuming alcohol, and he feared being sent to jail. Specifically, Iaulualo made the following untruthful statements to law enforcement: that he had met A.B. at her apartment, that they had not gone to the downtown bars, that he had not been drinking, and that A.B. had urged him to drink. Through Iaulualo's testimony, the jury was also told that Iaulualo had a prior conviction, which additionally could have diminished his credibility in the eyes of the jury.

¶26 Finally, unlike in *Mulhern*, Iaulualo had a full opportunity to cross-examine A.B. regarding her testimony that she had not previously engaged in anal intercourse. In *Mulhern*, for reasoning not clear to us, the defendant was not allowed to cross-examine the victim regarding her erroneously admitted testimony that she had not had vaginal intercourse in the week prior to the assault. Despite this limitation on the defense, which our supreme court noted and considered, the strength of the State's case was sufficient to support harmless error. Here, Iaulualo had the opportunity and ability to probe A.B.'s erroneously admitted testimony, even if he chose not to do so.

¶27    Iaulualo unpersuasively attempts to discount the strength of the State's case.  Central to his argument is his contention that A.B.'s testimony about her history of not engaging in anal intercourse and the prosecutor's references to this history affected his substantial rights and unfairly prejudiced him because his "defense was that [A.B.] consented….  The prosecution used [A.B.'s] lack of prior sexual experience to suggest the witness did not consent."  Iaulualo cites to *State v. Penigar*, 139 Wis. 2d 569, 585, 408 N.W.2d 28 (1987), to support his assertion that "[t]he improper evidence tipped the scales in a case that came down to the credibility of the accuser versus the Defendant."

¶28    In *Penigar*, our supreme court ordered a new trial after the defendant was convicted by a jury of third-degree sexual assault.  *Penigar*, 139 Wis. 2d at 572.  At trial, the victim testified that she did not consent to sexual intercourse with the defendant and that she had never had intercourse with anyone before, while the defendant testified that he had consensual sexual intercourse with the victim.  *Id.* at 575-76.  It was established that the victim falsely testified that she had never had sexual intercourse with anyone before.  The court concluded that the victim's erroneously-admitted and false testimony that she had never had sexual intercourse before the disputed assault "so pervasively affected the trial that the issue of consent was not fully tried" and that a new trial in the interest of justice was warranted.  *Id.* at 572-73.

¶29    We reject Iaulualo's argument that a similar outcome is warranted here.  *Penigar* is factually and legally distinguishable because the errors in the present case do not turn on the credibility of Iaulualo and A.B. on the issue of her consent to the act of anal intercourse.  Although Iaulualo testified at trial that A.B. consented to most of the sexual acts, he did not testify that the act of anal intercourse was consensual.  Instead, to repeat, he first testified that he did not

remember the act of anal intercourse occurring, but later in his testimony, he asserted that the act of anal intercourse never occurred. In other words, the erroneous testimony and references regarding A.B.'s lack of prior anal intercourse did not pervasively affect the question of consent (as was the case in *Penigar*) because the only evidentiary issue presented to the jury regarding the anal intercourse was whether it occurred at all.

¶30 As already discussed above, to the extent that the credibility scales were tipped against Iaulualo, he assisted in that regard by giving inconsistent testimony about whether anal intercourse occurred and by admitting at trial that he had repeatedly lied to the police when first interviewed by them in an effort to avoid returning to jail on a prior conviction which prohibited his consumption of alcohol. Accordingly, the jury had multiple proper bases for assigning a low credibility weight to Iaulualo's testimony that were unrelated to A.B.'s testimony about her lack of prior anal intercourse and to the prosecutor's references to that history.

¶31 For similar reasons, we also reject Iaulualo's contention that the State's reliance on *Mulhern* is misplaced. Iaulualo asserts that the defense theory in *Mulhern* is distinguishable from his defense because the defense in *Mulhern* was that no vaginal intercourse ever occurred, while Iaulualo's defense is that he and A.B. engaged in "consensual rough sex." As with his argument regarding *Penigar* just discussed, Iaulualo ignores that his testimony regarding anal intercourse was not that the act was consensual, but that he did not remember having anal intercourse with A.B. and, later, that the anal intercourse with A.B. never occurred. Accordingly, *Mulhern* is instructive in part because Iaulualo's defense on the issue of anal intercourse was similar to the defendant's defense in *Mulhern*.

¶32  Finally on this issue, we reject Iaulualo's argument that A.B.'s trial testimony about her history of not engaging in anal intercourse undercut his consent defense when viewed in tandem with A.B.'s initial statements to the police, when she stated, "I don't know if it was consensual," "I think it was probably," and "It was probably." There is no dispute that Iaulualo and A.B. engaged in some consensual sexual activity. But A.B. was unequivocal in her trial testimony that, when Iaulualo grabbed her hair, pushed her mouth on his penis, put his one hand and then his two hands around her neck, slapped her in the face and told her to "Shut up bitch" when she objected, pinned her down on the bed to have vaginal intercourse with her, and flipped her on her stomach and forced anal intercourse, all of these were nonconsensual activities. A.B. also testified that, when she first spoke to police on the morning of the incident, she was crying, in shock, confused, and unable to process and remember exactly what had happened to her. We are not persuaded that A.B.'s initial statements to police shortly after the assaults meaningfully dilute the strength of the State's second-degree sexual assault case against Iaulualo.

¶33  In sum on this issue, the testimony of both A.B. and Iaulualo, the corroborating medical evidence and testimony by the S.A.N.E. nurse and treating physician that A.B. had sustained external and internal vaginal and rectal injuries consistent with sexual assault, A.B.'s contemporaneous reports of being assaulted and seeking help from the police and numerous family members and friends, and the nature of Iaulualo's consent defense, establish that the State has met its burden in proving that, even without the erroneous admission of A.B.'s testimony about her history of not engaging in anal intercourse and the prosecutor's references to this history, a rational jury considering the totality of circumstances would have found Iaulualo guilty of second-degree sexual assault beyond a reasonable doubt.

Therefore, the circuit court's error in admitting the victim's testimony about her sexual history and the prosecutor's references to A.B.'s sexual history were harmless.

## II.  Ineffective Assistance of Counsel

¶34    Iaulualo also argues that he is entitled to a new trial because his trial counsel was ineffective for failing to object to the admission of A.B.'s testimony about her sexual history and the prosecutor's references to it.  For a claim of ineffective assistance of counsel to be successful, a defendant must "demonstrate both that (1) counsel's representation was deficient; and (2) this deficiency was prejudicial."  *State v. Maloney*, 2005 WI 74, ¶14, 281 Wis. 2d 595, 698 N.W.2d 583 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). We need not address both prongs of this inquiry if the defendant makes an insufficient showing on one.  *Id.*  Whether trial counsel performed deficiently and whether a defendant was prejudiced as a result are issues of law that we review independently.  *State v. Breitzman*, 2017 WI 100, ¶¶38-39, 378 Wis. 2d 431, 904 N.W.2d 93.

¶35    We assume without deciding that trial counsel was deficient in failing to object to the admission of the evidence of A.B.'s sexual history and the prosecutor's references to this history, and focus our analysis on the prejudice prong.  To establish prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*, ¶39.  The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Strickland*, 466 U.S. at 687.

17

¶36    For the same reasons we discussed in determining that the State has demonstrated that the admission of A.B.'s testimony about her sexual history and references to that history are harmless, we conclude that Iaulualo cannot show a reasonable probability that, but for trial counsel's assumed deficient performance, the result of the trial would have been different.  In other words, given the substantial evidence introduced at trial that supports Iaulualo's second-degree sexual assault conviction, as previously detailed, he has not demonstrated that his trial counsel's failure to object to the admission of evidence of A.B.'s sexual history and the prosecution's reference to that history were "so serious as to deprive [Iaulualo] of a fair trial, a trial whose result is reliable."  *See **id.**; see also **State v. Sanchez***, 201 Wis. 2d 219, 230-31, 548 N.W.2d 69 (1996) (holding that the harmless error inquiry and the prejudice inquiry under ***Strickland*** are "substantively the same," except for the party carrying the burden of proof (citation omitted)).  Therefore, we reject Iaulualo's claim that the ineffective assistance of his trial counsel entitles him to a new trial.

## CONCLUSION

¶37    For the foregoing reasons, the judgment and order of the circuit court are affirmed.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.